**FIRST NATIONAL BANK OF MISSOURI CITY, Appellant,**

v.

**Dianna Land GITTELMAN and Lisa Fike, Appellees.**

No. C14–88–1059–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 29, 1990.

Rehearing Denied April 26, 1990.

Macon Strother, Houston, for appellant.

Don T. Schwartz, Rosenberg, Anthony D. Sheppard, Houston, for appellees.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

PAUL PRESSLER, Justice.

This controversy concerns appellant's disposition of some of the collateral for a loan. Following a bench trial, the court awarded actual and exemplary damages and attorney's fees to appellees. The judg-

ment is affirmed as modified but is remanded for entry of postjudgment interest.

In February 1987 Mrs. Gittelman and First National Bank of Missouri City combined several loans into one balloon note with monthly payments. The note was secured in part by a 1982 Mazda. The car was actually in the possession of appellee, Lisa Fike, Mrs. Gittelman's daughter, who was working and attending college in Austin. In July 1987 Fike was returning to Austin when the Mazda's engine apparently caught fire. The car was towed to a dealership in Austin. The fire occurred on a Saturday. On the following Monday, Gittelman notified her loan officer at First National about the car. During the next week, Gittelman negotiated with her insurance company and again called the loan officer, Susan Moffett, to tell her she had not yet made a decision about what to do with the car.

Gittelman next contacted Moffett to propose that the bank release the title to the Mazda for $500 and then reduce the note by that amount when it came due. Moffett responded that she would check with someone at the bank and get back to her. When Gittelman called back a week or so later, Moffett said the bank had been told the car could be sold for between $1000 and $1600 and, therefore, would not agree to releasing the title for $500. Gittelman told Moffett she was not yet ready to make a decision on the car. She continued negotiations with the insurance representatives, who decided they were not going to pay for the damage. She then decided to replace the engine with a used one. When she called the Austin dealership to tell them of her decision, she was told that the bank had picked up the car. She then called Moffett, who told her the car had been sold for $600 and that after deducting several expenses relating to the car, her account would be credited with $181.

The bank claims that Gittelman authorized the sale in a call to Moffett. Gittelman disputes this. She also maintains that her account was not credited with the $181 until about the time she filed suit against the bank. The bank did not provide her with records of the sale as requested. Gittelman still does not know exactly what happened to her car, and, according to the State Department of Highways and Public Transportation, Division of Motor Vehicles, the title remains in her name. Gittelman continued to make the installment payments on her note, but when the note came due, she did not pay the remaining amount.

The bank claims that Gittelman wanted the title released so that she could sell the car to the Austin dealership for $500. She was not going to pay the $500 to the bank but instead use it to buy another car. According to Moffett, when told the bank would not release the title, Gittelman requested that the bank pick up the car from the dealership and sell it at auction. The bank alleges that Gittelman became angry, not because the car was sold, but because it was sold for so little money.

The trial court heard the testimony and ruled in favor of Gittelman and her daughter, who had intervened in the suit. He awarded $9000 in actual consequential damages, $9000 in exemplary damages and her attorney's fees to Gittelman. He also awarded $5000 as actual, consequential and special damages and $2000 as exemplary damages to Lisa Fike. The bank, which had counterclaimed against Gittelman, was awarded the $17,360.88 due on the note. Gittelman was allowed to offset her $18,000 judgment against that amount. The trial court found that the bank, through its officers, owed Gittelman and Fike a strict duty of good faith and fair dealing. He also found that the bank, in bad faith, breached the relevant written contracts, violated the UCC against Gittelman and committed the torts of deceit, concealment and conversion against both Gittelman and Fike. He further found that Fike was a lawful bailee of the Mazda and that she suffered mental anguish as a proximate result of the bank's intentional actions by being deprived of the use and possession of her car. The bank made an untimely request for findings of fact and conclusions of law which the court denied.

First National appeals the judgment in ten points of error. As many of those

points challenge the sufficiency of the evidence, the appropriate standards of review are as follows. Where findings of fact and conclusions of law are set forth as recitations in the judgment, they shall be treated as findings of fact and conclusions of law filed in accordance with Tex.R.Civ.P. 296. *Cottle v. Knapper*, 571 S.W.2d 59, 64 (Tex. Civ.App.—Tyler 1978, no writ). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards which are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *Okon v. Levy*, 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). In a no evidence point of error, only the evidence and inferences that support the challenged finding will be considered and all contrary evidence and inferences will be disregarded. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988). In a factual sufficiency point of error, all of the evidence will be considered and the finding will be set aside only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

In point of error one, the bank argues that the trial court erred in finding the bank guilty of conversion because such a finding is against the great weight and preponderance of the evidence. This essentially comes down to Gittelman's word against Moffett's. As corroboration of Moffett's testimony, the bank points to a memorandum prepared by her and dated August 27, 1987. The memo is addressed to the files of Gittelman and another customer and discusses Moffett's request to an auctioneer to pick up two vehicles in Austin, the Mazda and a car belonging to the other customer. In the memo, Moffett states, "Mrs. Land [Mrs. Gittelman's name prior to her marriage] asked that we pick up the vehicle and sell it at the auction in Houston." The bank also directs our attention to Fike's statement in her deposition that during a conversation, Gittelman remarked that what the bank thought it could get for the car was "a much better deal than what Mazda had offered us." Fike further stated that her mother thought selling the car through the bank was "the best thing to do under the circumstances."

■ The trier of fact alone judges the credibility and weight to be given the testimony of the witnesses and resolves conflicts in the testimony. *Precision Homes, Inc. v. Cooper*, 671 S.W.2d 924, 929 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Neither the memo nor the deposition testimony are dispositive. Gittelman's remarks during her conversation with her daughter are expressions of her thoughts, not proof that she actually followed through and authorized the bank to sell the car. The trial court's finding that the bank was guilty of conversion is not so against the great weight and preponderance of the evidence as to be manifestly unjust. Point of error one is overruled.

■ In point of error two, First National complains that the trial court erred in awarding Gittelman actual damages in the amount of $9000 because the evidence was factually insufficient to support such an award. The bank argues that the measure of actual damages in a conversion case is the value of the converted property at the time of the conversion. Since the car sold for $600, the bank maintains that Gittelman is entitled to only that amount and that her evidence as to mental anguish and physical ailments is not admissible to determine her actual damages.

There appear to be no exact rules to determine damages in a conversion case. Generally, damages are the value of the property at the time of a conversion together with legal interest thereon. *Imperial Sugar Co. v. Torrans*, 604 S.W.2d 73, 74 (Tex.1980). Damages may also include other losses or expenses necessary to compensate the plaintiff "for all actual losses or injuries sustained, not merely the reasonable market value of the property, as a natural and proximate result of the defendant's wrong." *Virgil T. Walker Constr. Co. v. Flores*, 710 S.W.2d 159, 161 (Tex. App.—Corpus Christi 1986, no writ). The

award here is not divided among the elements of damage. Appellees claim that $9000 was awarded for the value of the car and for mental anguish.

■ The bank argues that the value of the car is $600 because it sold for that amount at auction. However, actual damages in a conversion case are not determined by the price at which the property was sold but rather by market value at place and time of conversion. *Bishop v. Geno Designs, Inc.*, 631 S.W.2d 581, 584 (Tex.App.—Tyler 1982, no writ). Gittelman testified that she paid $3500 for the car and that its blue book value prior to the fire was $3100. When her attorney asked her opinion of the car's value after the fire, she first responded that she did not know. Later, Gittelman stated that after the fire, the car was worth approximately $1500. She determined this value by the price she paid for the car less the mileage and the damage to the engine.

■ The bank challenges Gittelman's competency to testify as to the market value of the car. The owner of property can testify as to its market value even if he could not qualify to testify about the value of like property belonging to someone else. *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984). The testimony must show that the testimony is to market value. *Id.* at 505. Gittelman's testimony indicated that she took into account various relevant factors in arriving at her opinion. Thus there is some evidence to support the $1500 award of actual damages.

■ Mental anguish evidently is the basis for most of the court's award of actual damages. Courts in at least two early conversion cases refused to include such damages as an element of actual damages because conversion does not involve physical injury, and mental suffering was generally connected with physical injury. *White Sewing Mach. Co. v. Lindsay*, 14 S.W.2d 311, 312 (Tex.Civ.App.—Galveston 1929, writ dism'd); *Dunn v. Wilkerson*, 203 S.W. 59, 59–60 (Tex.Civ.App.—San Antonio 1918, no writ). The *Lindsay* court noted, however, that if malice were involved and exemplary damages thus recoverable, the

jury could consider "distress of mind" in assessing those damages. *Lindsay*, 14 S.W.2d at 312. Courts in more recent cases have followed this precept by allowing juries to consider mental anguish, among other factors, in fixing the amount of exemplary damages. *See Earthman's, Inc. v. Earthman*, 526 S.W.2d 192, 208 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ); *Lack's Stores, Inc. v. Waisath*, 479 S.W.2d 406, 408 (Tex.Civ.App.—Waco 1972, no writ). We, therefore, sustain in part the bank's second point of error and modify the actual damages to delete the award of $7500 for mental anguish. Mental anguish will instead be reviewed under point of error four and the exemplary damage award.

■ In its third point of error, the bank asserts that the trial court erred in awarding damages to Fike, the intervenor, as a bailee of the Mazda. Although this is not a classic bailment situation, the bank does not contest that designation. The bank argues that Fike may not be compensated either for the value of the car or loss of use. This is correct. Fike is not entitled to damages for the value of the car. A recovery by either the bailee or the bailor will bar an action by the other. *Masterson v. International & G.N. Ry. Co.*, 55 S.W. 577, 578 (Tex.Cir.App.1900, no writ). There cannot be a double recovery for the value of the same item. Fike is also not entitled to damages for loss of use of the car. A party requesting the *return* of converted property may recover money damages for the loss of use of the property during the period of detention. *Southwind Aviation, Inc. v. Avendano*, 776 S.W.2d 734, 737 (Tex.App.—Corpus Christi 1989, writ denied). This is not allowed when the plaintiff is suing for the value of the property. *Id.*, citing *Sibley v. Fitch*, 226 S.W.2d 885 (Tex.Civ.App.—Waco 1950, writ ref'd).

There was also no evidence concerning the value of the loss of use. Both Gittelman and Fike testified as to the inconvenience of Fike's not having the use of the car. They testified that Fike could not re-enroll in school because she had no way to get there and was dependent on friends

and co-workers for transportation. However, she submitted no evidence of expenses, such as car rental payments or gas reimbursements, that would support damages for her loss. Without such evidence, any answer as to the value of the loss of use must be based upon conjecture and is thus impermissible. *Garcia v. Rutledge,* 649 S.W.2d 307, 313 (Tex.App.—Amarillo 1982, no writ).

The trial court found that Fike suffered mental anguish as a proximate result of being deprived of use of the car. There was evidence to support such damages as Fike testified to being upset when she found out about the car and experiencing headaches, stomach aches and a rash on her hands attributed to stress. The bank does not address mental anguish in its argument.

■ The trial court did not apportion the $5000 award among the elements of damages. Since there could be no award for the value of the car or for the loss of its use, it must be understood to be for mental anguish alone. As stated under the discussion of point of error two, mental anguish should be considered in assessing exemplary damages. Therefore, there are no actual damages. Without a recovery of actual damages, plaintiffs may not recover exemplary damages. *Bell v. Ott,* 606 S.W.2d 942, 954 (Tex.Civ.App.—Waco 1980, writ ref'd n.r.e.). Point of error three is thus sustained. The judgment is modified to delete both the $5000 actual and $2000 exemplary damage awards to Fike.

■ In point of error four, the bank challenges the factual sufficiency of the evidence to support the $9000 exemplary damages award to Gittelman. The bank argues that there must be a willful act of violence, maliciousness or oppressive conduct in conjunction with a conversion before a defendant can be subjected to exemplary damages. The bank asserts that there is no evidence tending to show malice or ill will. Exemplary damages are not allowed for the ordinary conversion of property. They are allowed, however, if the conversion is accompanied by such willful acts. *Woodard v. Tatum,* 277 S.W.2d

943, 945 (Tex.Civ.App.—Waco 1955, no writ).

■ The trial court determined that the bank sold Gittelman's car without her authorization. The bank agreed to credit Gittelman's account with $181 from the sale after the expenses were deducted but did not do so until after she filed suit. The bank also delayed producing records of the sale as requested several times. The car allegedly was purchased by an auto dealership. However, Gittelman remained the owner of record. The bank also threatened to take her other car when she refused to pay the balloon note. She stated that her refusal was because the bank had broken the contract. The record thus supports a finding of oppressive conduct on the bank's part, and such a finding supports an award of exemplary damages to Gittelman.

■ As discussed in point of error two, an award of exemplary damages may also encompass mental anguish. Gittelman testified that after the car was sold, she experienced depression, frustration and anger. In addition, she suffered from severe headaches, nausea and extreme palpitations of the heart and had to see a doctor. She had not suffered such symptoms prior to the problems with the car. This testimony offers further support for exemplary damages.

■ The bank also argues that exemplary damages must be reasonably proportioned to actual damages. Based on its assertion that the actual damages sustained by Gittelman should be no more than $600, the bank argues that the $9000 exemplary damage award is not in proper proportion. There can be no set rule or ratio between the amount of actual and exemplary damages that will be considered reasonable. *Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981). This determination must depend upon the facts of each particular case, and there are certain factors to be considered. *Id.* Damages in the amount of $1500 were affirmed in point of error two. Reviewed according to the *Alamo Nat'l Bank* standards, the ratio of actual damages to exemplary damages is

not unreasonable. Point of error four is overruled.

In point of error five, the bank challenges the award of attorney's fees. It maintains that in conversion suits, such fees cannot be recovered as a part of actual damages but are to be considered only in determining the amount of exemplary damages. This is correct. *See Earthman's, Inc. v. Earthman,* 526 S.W.2d at 208; *Lack's Stores, Inc. v. Waisath,* 479 S.W.2d at 408. Appellees argue, however, that the attorney's fees can be predicated upon the trial court's finding of a breach of contract. In point of error six, the bank challenges this finding as being against the great weight and preponderance of the evidence. The bank's argument is that the car was not sold pursuant to a default but at Gittelman's request. Thus compliance with the notice of sale requirements of the security agreement was not necessary, and there was no breach of contract.

The trial court found that the bank converted Gittelman's car. This implies that the bank had no authority to sell it. The same facts also support a finding of breach of contract. The lack of authorization made the sale of the car equivalent to the disposition of collateral upon default, thus entitling Gittelman to reasonable notice of the sale. Moffett testified that the loan to Ms. Gittelman was a "criticized asset" although the bank had not experienced problems with her payments. There is sufficient evidence of breach of contract. Point of error six is overruled.

A breach of contract supports an award of attorney's fees. Point of error five is also overruled. Tex.Civ.Prac. & Rem.Code Ann. § 38.001 (Vernon 1986); *Mead v. Johnson Group, Inc.,* 615 S.W.2d 685, 689 (Tex.1981).

In point of error seven, the bank argues that the trial court's finding that the bank violated the Texas Uniform Commercial Code, specifically Tex.Bus. & Com. Code Ann. § 9.504 (Tex.UCC) (Vernon Supp.1990), is against the great weight and preponderance of the evidence. That section deals with a secured party's right to dispose of collateral after default. The bank asserts that notice of sale is the issue and that notice was not required because there was no default.

As stated above, the evidence supports a determination that the sale of the car was equivalent to the disposition of collateral upon default. According to § 9.504, the secured party must give the debtor reasonable notification of the time and place of sale and must account to the debtor for any surplus. Ms. Gittelman received no such notice and the $181 surplus was not credited to her account until after she filed suit. The bank ignored several requests for records of the sale. The trial court's finding is not against the great weight and preponderance of the evidence. Point of error seven is overruled.

In point of error eight, the bank maintains that the trial court erred in awarding exemplary damages for breach of contract because there was no showing of malice. Exemplary damages were affirmed in point of error four and need not be addressed again. Point of error eight is overruled.

The bank next challenges the trial court's failure to award the bank attorney's fees. The bank argues that the promissory note provides that the debtor agrees to pay reasonable attorney's fees in the event of default and that Gittelman was in default when she failed to pay the promissory note on March 3, 1988.

The promissory note actually states that if the note is referred for collection to an attorney, the debtor will pay all amounts actually incurred by the bank as court costs and attorney's fees assessed by a court. The trial court did not assess such fees in spite of the fact that the court awarded the bank judgment against Gittelman for the amount due on the note. Rule 131 of the Texas Rules of Civil Procedure states that the successful party to a suit shall recover all costs incurred therein, except where otherwise provided. Rule 141 provides that the court may, for good cause, adjudge the costs otherwise. No provision is made, absent good cause, for allowing an unsuccessful party recovery of his attorney's fees. *Reames v. Reames,*

**172**

604 S.W.2d 335, 337 (Tex.Civ.App.—Dallas 1980, no writ). It is clear from the language in the court's judgment that Gittelman was the successful party in this suit. The court, therefore, did not abuse its discretion in awarding attorney's fees to her but not to the bank. Point of error nine is overruled.

In point of error ten, the bank argues that the trial court's failure to award it interest on the debt from date of default until date of payment was against the great weight and preponderance of the evidence. The note provided for interest at the rate of eighteen percent per annum. Gittelman offered no testimony contradicting the bank's claim that the interest was owed. Gittelman argues that there is testimony in the record to support the award of $17,360.88 but no testimony as to any amount of interest. She also maintains that she owed the bank nothing on the note because of the breach of contract.

The bank requested the interest in its pleadings. At trial, Moffett testified that the terms of the loan called for an interest rate at the time of default or upon maturity. She also stated that the interest owed as of the date of trial could be calculated by multiplication. The pleadings and the testimony are sufficient evidence of the interest due on the note. Having awarded the bank the principal due, the trial court should have also awarded the interest. The case is therefore remanded to the trial court for determination and entry of the interest due on the note from date of default until date of payment.

The judgment is modified to delete $7500 from the $9000 actual damages awarded to Gittelman and to delete the $5000 actual and $2000 exemplary damages awarded to Fike. The case is also remanded to the trial court for entry of interest. The judgment is affirmed as modified.