E.B. Sanders 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00020-CV







E. B. Sanders and National Association of Employers, Inc., Appellants



v.



American Group Life Insurance Company, by and through its designated successor in
 interest, Jerry Cunningham, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 92-13805, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING








 This is an appeal from a judgment in a suit involving a breach of contract and
conversion action brought by appellee American Group Life Insurance Company ("American
Group") against appellants E. B. Sanders and National Association of Employers, Inc. ("NAE"). 
In response to these counts, appellants alleged that American Group fraudulently induced them
to continue to do business with American Group by orally agreeing to modify the original written
contract and by then failing to so modify the contract in writing. The jury found that American
Group did not fraudulently induce appellants to continue doing business with it and that appellants
converted $109,196.10 from American Group. The jury further found that NAE acted
maliciously and awarded punitive damages to American Group. Appellants filed a timely motion
for new trial and thereby perfected this appeal.



BACKGROUND


 American Group was an insurance company licensed in Texas at the time the cause
of action arose. In March 1991, American Group entered into a "General Agent Contract" (the
"Contract") with appellant E. B. Sanders, individually, under which they agreed to sell a type of
accident insurance in Texas. The parties operated under the Contract until September 1992 when
American Group sent a letter to NAE notifying them of termination of that agreement. Appellants
claim that, at the time the Contract was signed, the parties anticipated entering into a new
agreement when appellant NAE, a corporation owned by Sanders, received its Third Party
Administrator (TPA) license. NAE received the license on August 29, 1991.

 In October 1991, appellant Sanders, his son Richard, and Jerry Cunningham,
President of American Group, met to discuss the business relationship. Sanders presented
Cunningham with a copy of the TPA license, a fidelity bond, and a copy of a new contract
proposal. Appellants claim that Cunningham knew of this proposal and that they expected it to
be a replacement agreement for the Contract. Cunningham, however, viewed the meeting, which
took place at Sanders' fishing camp, as a purely informal social gathering, rather than a business
meeting. He also characterized the proposal as merely a unilateral proposal presented by
appellants. Cunningham never signed the proposal, and the Contract continued to be in effect as
written.

 Appellants' proposal varied from the Contract in one crucial way. The Contract
provided that Sanders would pay all claims which exceeded premiums collected and that Sanders
would receive the underwriting profit only if he produced more than $1 million in insurance
premiums. On the other hand, appellants' October 1991 proposal provided that Sanders would
receive the underwriting profit regardless of the amount of premiums collected. Sanders sent the
proposal to Cunningham three times, but Cunningham never signed it. Neither party attempted
to revoke the Contract using its termination clause. Thus, the Contract continued to govern the
relationship until Cunningham terminated it in September 1992.

 Appellants did not produce more than $1 million in premiums during the period
between March 1991 and September 1992. However, beginning in March 1992, appellant NAE
wrote and cashed two checks from the underwriting profits; one check in the amount of
$79,284.96 and a second in the amount of $29,911.14. American Group asked appellants to
return the money. Upon appellants' refusal, American Group filed suit for breach of contract and
conversion. In response, appellants claimed American Group fraudulently induced them to
continue to do business with American Group by orally agreeing to modify the agreement on
October 6, 1991 and then by failing to respond to the written memorialization of the oral
agreement. The jury found for American Group and awarded $109,196.10 actual damages and
$60,000.00 exemplary damages.



DISCUSSION


 Appellants' first point of error claims that the record is factually insufficient to
support a jury finding that American Group did not fraudulently induce appellants to continue
business with appellee and that such a finding is against the great weight and preponderance of
the evidence.

 Appellants claim American Group knew that the Contract would be renegotiated
when NAE received its TPA license. Appellants also claim American Group knew before the
October 6, 1991 meeting that the new proposed agreement would not contain a production
requirement. Appellants argue that American Group's alleged representation to appellants that
it would sign the proposal and its subsequent refusal to do so constituted fraudulent action
intended to induce appellants to continue their business relationship with American Group. 
American Group admits that the parties intended to renegotiate the contract, but argues that the
October document was merely a proposal and that Cunningham never agreed to sign a proposal
eliminating the production quota.

 The elements of fraudulent inducement to enter a contract include: (1) a material
representation; (2) that is false; (3) that the speaker either knew was false or represented as a
positive assertion without any knowledge of truth; (4) that was made with the intention the other
party should act upon it; (5) that was relied upon by the other party; and (6) that resulted in injury
to the other party because of such reliance. Barth v. Muir, 598 S.W.2d 729, 731 (Tex. Civ.
App.--El Paso 1980, no writ) (citing Stone v. Lawyers Title Ins. Corp., 554 S.W.2d 183, 185
(Tex. 1977)).

 The record shows that the two parties met in October 1991 and discussed, among
other things, a proposal to alter the Contract. There is no evidence to support appellant's claim
that an agreement was reached, and American Group did not sign any contracts at that meeting. 
In fact, American Group refused to sign the proposal. Any injury suffered by appellants resulted
from appellants' own refusal to abide by or to cancel the original Contract. The jury was faced
with conflicting evidence on this point and resolved the issue against appellants. Point of error
one is overruled.

 In two points of error, appellants challenge the legal and factual sufficiency of the
jury finding that appellants converted the property of American Group by cashing two checks in
the amounts of $79,284.96 and $29,911.14. Appellants argue that American Group may not
maintain an action in conversion because the funds taken cannot be identified as specific chattel
and that such an action is inappropriate because the debt may be discharged by the payment of
money. Upper Valley Aviation v. Mercantile Nat'l Bank, 656 S.W.2d 952, 955 (Tex. App.--Dallas
1983, writ ref'd n.r.e.). In response, American Group argues that an action may be maintained
for conversion of money where the money can be identified and where there is a breach of an
obligation to deliver or treat the specific money in a certain manner. Southwest Indus. v. Berkeley
House, 695 S.W.2d 615, 617 (Tex. App.--Dallas 1985, writ ref'd n.r.e.).

 When faced with both a legal and a factual sufficiency challenge, we first address
the legal sufficiency challenge. Glover v. Texas Gen. Indem. Co., 619 S.W.2d 400, 401 (Tex.
1981). If an appellant challenges the legal sufficiency of an adverse finding, we must consider
only the evidence and inferences tending to support the finding of the trier of fact and disregard
all evidence and inferences to the contrary. Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593
(Tex. 1986), cert. denied, 111 S. Ct. 135 (1990); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.
1965). Any probative evidence supporting the finding is sufficient to overrule the point of error. 
See Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L.
Rev. 361, 364 (1960).

 An examination of the record supporting the jury finding shows that appellants
cashed checks from funds held in trust for American Group. Their actions were a breach of their
obligation to deliver the money to American Group in accordance with the Contract as written. 
Because there is more than a scintilla of evidence to support the jury finding that appellants
converted these funds, appellants' point of error three is overruled.

 Appellants' second point of error challenges the factual sufficiency of the finding
that appellants converted funds. When reviewing a jury finding to determine the factual
sufficiency of the evidence, we consider all the evidence and set aside the judgment only if it is
so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Austin
Transp. Study v. Sierra Club, 843 S.W.2d 683, 689 (Tex. App.--Austin 1992, writ denied).

 There is no dispute that appellants cashed the checks from American Groups'
underwriting fund. Appellants contend there was an oral agreement between the two parties to
alter the Contract, but the evidence to support their claim was disputed by American Group. The
jury's finding is not against the great weight and preponderance of the evidence, and therefore,
point of error two is overruled.

 In points of error four and five, appellants contend the evidence is legally and
factually insufficient for the jury to award punitive damages to American Group. Specifically,
appellants' fifth point of error asserts that there is no evidence to support the jury's affirmative
answer to question number three, which asked whether appellants acted maliciously or with
conscious indifference to American Group's rights. (1)

 In deciding a legal-sufficiency point of error, we must first consider only the
evidence and inferences tending to support the finding of the trier of fact and disregard all
evidence and inferences to the contrary. Alm, 717 S.W.2d at 593. "[W]e are required to
determine whether the proffered evidence as a whole rises to a level that would enable reasonable
and fair-minded people to differ in their conclusions." Transportation Ins. Co. v. Moriel, 879
S.W.2d 10, 25 (Tex. 1994) (citing William Powers, Jr. & Jack Ratliff, Another Look at "No
Evidence" and "Insufficient Evidence", 69 Tex. L. Rev. 515, 523 (1991)). "[I]f reasonable minds
cannot differ from the conclusion that the evidence lacks probative force it will be held to be the
legal equivalent of no evidence." Id.

 American Group asserts that the evidence overwhelmingly shows that appellant
Sanders acted maliciously and with conscious indifference to American Group's rights. American
Group argues that appellant Sanders admitted that he knew he was not entitled to the money under
the existing written contract. American Group claims that, despite acknowledging the presence
of a production quota in the written agreement, Sanders stated that he was not going to comply
with it. Further, American Group points to the fact that appellant Sanders, without explanation,
wrote a check out of sequence for the initial payment of $79,284.96 in an apparent attempt to hide
his actions.

 Proper only in the most exceptional of cases, "[p]unitive (or exemplary) damages
are levied against a defendant to punish the defendant for outrageous, malicious, or otherwise
morally culpable conduct." Id. at 16. Punitive damages may not be awarded for the ordinary
conversion of property. First Nat'l Bank v. Gittelman, 788 S.W.2d 165, 170 (Tex. App.--Houston
[14th Dist.] 1990, writ denied).

 In this case, appellants admitted that, under the Contract as written, they were not
entitled to the money. Appellants believed that the Contract terminated when NAE got its TPA
license or, at the latest, "when [appellant Sanders] forwarded to Mr. Cunningham on the 8th day
of October a letter and executed copies of the third-party administrator contract which he had
already agreed to sign." This belief in the existence of a new contract also explains why appellant
Sanders stated at the fishing camp meeting that he would not comply with the production quota. 
Further, writing a check out of sequence, in and of itself, is not outrageous, malicious, or
otherwise morally culpable conduct. Thus, the conversion in this case is not accompanied by any
conduct that would justify the trial court's award of punitive damages.

 Because we do not find legally-sufficient evidence to support the trial court's award
of punitive damages in this case, we sustain appellants' fifth point of error. Accordingly, it is not
necessary to address appellants' remaining points.



CONCLUSION 


 We reverse and render judgment that American Group take nothing on its claim for
punitive damages and affirm the judgment in all other respects.



 

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Jones and B. A. Smith

Reversed and Rendered in Part; Affirmed in Part

Filed: January 10, 1996

Do Not Publish
1.   Question number three was conditional, first requiring an affirmative answer to the
jury question two which asked whether or not appellants were guilty of conversion of
American Group's property.



legally and
factually insufficient for the jury to award punitive damages to American Group. Specifically,
appellants' fifth point of error asserts that there is no evidence to support the jury's affirmative
answer to question number three, which asked whether appellants acted maliciously or with
conscious indifference to American Group's rights. (1)

 In deciding a legal-sufficiency point of error, we must first consider only the
evidence and inferences tending to support the finding of the trier of fact and disregard all
evidence and inferences to the contrary. Alm, 717 S.W.2d at 593. "[W]e are required to
determine whether the proffered evidence as a whole rises to a level that would enable reasonable
and fair-minded people to differ in their conclusions." Transportation Ins. Co. v. Moriel, 879
S.W.2d 10, 25 (Tex. 1994) (citing William Powers, Jr. & Jack Ratliff, Another Look at "No
Evidence" and "Insufficient Evidence", 69 Tex. L. Rev. 515, 523 (1991)). "[I]f reasonable minds
cannot differ from the conclusion that the evidence lacks probative force it will be held to be the
legal equivalent of no evidence." Id.

 American Group asserts that the evidence overwhelmingly shows that appellant
Sanders acted maliciously and with conscious indifference to American Group's rights. American
Group argues that appellant Sanders admitted that he knew he was not entitled to the money under
the existing written contract. American Group claims that, despite acknowledging the presence
of a production quota in the written agreement, Sanders stated that he was not going to comply
with it. Further, American Group points to the fact that appellant Sanders, without explanation,
wrote a check out of sequence for the initial payment of $79,284.96 in an apparent attempt to hide
his actions.

 Proper only in the most exceptional of cases, "[p]unitive (or exemplary) damages
are levied against a defendant to punish the defendant for outrageous, malicious, or otherwise
morally culpable conduct." Id. at 16. Punitive damages may not be awarded for the ordinary
conversion of property. First Nat'l Bank v. Gittelman, 788 S.W.2d 165, 170 (Tex. App.--Houston
[14th Dist.] 1990, writ denied).

 In this case, appellants admitted that, under the Contract as written, they were not
entitled to the money. Appellants believed that the Contract terminated when NAE got its TPA
license or, at the latest,