TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-05-00076-CV






K-Bar Services, Inc.; Brian Kalisek and James Kalisek, Appellants


v.


Michael English, Appellee






FROM THE COUNTY COURT AT LAW NO. 1 OF COMAL COUNTY

NO. 99CV-276, HONORABLE BRENDA CHAPMAN, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 K-Bar Services, Inc., Brian Kalisek, and James Kalisek appeal the portions of a
judgment denying them attorneys' fees and awarding damages to Michael English. The court
awarded English damages for work he performed, but for which he was not paid. The dispute was
tried to a jury. Appellants contend that the jury's findings and the record do not support the
judgment assessing liability jointly and severally against them. They also complain that the trial
court erred by failing to award them attorneys' fees for the conversion claim on which they prevailed. 
We affirm the judgment.


Facts and Procedural Background 

 The Kaliseks own and operate K-Bar Services, Inc., which provides road maintenance
and repair services that require the use of trucks and heavy equipment. The Kaliseks' cousin, Judy
English, is married to Appellee Michael English. Appellee repaired appellants' equipment and also
sold some of it. No written agreement governs the arrangement between the parties.

 After English was not paid for some of his work, he sued appellants for breach of
contract and in quantum meruit. Appellants asserted that English's use of the equipment was his
agreed compensation. They also contended that English failed to complete some of the agreed work
and performed some work inadequately. Appellants counterclaimed for conversion, fraud, and
breach of contract, alleging that English performed unauthorized work, failed to return vehicles
belonging to appellants, and sold property belonging to appellants without giving them the proceeds
of the sale.

 The jury found partly for and partly against both sides. It found that appellants owed
English $5,410.92 in damages for uncompensated work. It also found that all three appellants failed
to comply with agreements with English and accepted his work outside those agreements without
compensating him for it. The jury also found English owed appellants $4,500 for conversion of their
1986 Ford pickup. They found that a reasonable fee for English's attorney was $11,589.91 for trial
work, with up to $4,000 for appeals. The jury also found that a reasonable fee for appellants'
attorney was $10,500 for trial, with up to $4,000 for appeals.

 Appellants filed a motion for judgment notwithstanding the verdict. In addition to
urging that English should not get attorneys' fees and that they should get attorneys' fees, appellants
contended that the verdict was ambiguous regarding individual liability. Appellants argued that the
verdict provided no legal basis for joint and several liability and provided no way to determine the
proportionate liability of appellants.

 The court awarded English $11,410.92--an amount equal to the $5,410.92 award for
uncompensated work, less $4,500 for the value of the property converted, plus $10,500 for attorneys'
fees--as well as prejudgment interest and contingent attorneys' fees in the event of appeal. The court
imposed liability jointly and severally against all three appellants. The court denied all other relief
generally, including appellants' request for attorneys' fees.

 Appellants filed a motion to modify and a motion for new trial, urging variations on
the issues presented in their motion for judgment notwithstanding the verdict. They added assertions
that the jury questions failed to differentiate among agreements with or services provided to benefit
one appellant to the exclusion of others. Appellants reiterated that the verdict did not support either
individual damage awards or joint and several liability. The court denied the motions.

 Appellants contend that the jury verdict and the record do not support the award of
damages jointly and severally against appellants. They argue that the verdict is inadequate because
the jury did not necessarily find that all three appellants breached the same promises to English and
because the submission of a single question on damages does not provide a basis on which to
determine the damages awarded against the individual appellants. They also argue that insufficient
evidence supports assessing liability jointly and severally against them. Finally, they contend that
the trial court erred by failing to award attorneys' fees to appellants for the conversion claim on
which they prevailed.


Adequacy of the jury charge

 Review of the jury charge reveals that the questions concerning appellants' liability
are posed in the disjunctive with respect to the actions of each individual appellant, but the damages
question requests a single answer regarding the amount needed to compensate English. Question
No. 1 inquires whether "English and K-Bar Services, Brian Kalisek and/or James Kalisek agree[d]
that Michael English would perform work for any or all of them in exchange for compensation?" 
Question No. 2 asks whether English performed compensable work for K-Bar, Brian Kalisek or
James Kalisek that was not pursuant to any agreement. Question No. 3 asks, "Did K-Bar Services,
Inc., Brian Kalisek or James Kalisek fail to comply with the agreement specified in Question No.
1?" These three questions have separate answer blanks for each appellant, all nine of which the jury
filled with the answer, "Yes." Question No. 4 asked "What sum of money, if any, if paid now in
cash, would fairly and reasonably compensate Michael English for the work performed?" The single
answer to this question was $5,410.92.

 Appellants argue that these answers do not support joint and several liability by all
appellants for the full $5,410.92 award or disclose the relative liability of appellants individually. 
They complain that, although the jury found that each appellant breached an agreement with English
and that English performed uncompensated work for each appellant outside of any agreement, there
is no jury finding that supports assessing all of the damages against all appellants jointly and
severally.

 English contends that appellants waived their right to raise this issue on appeal
because they did not raise it before the court submitted the charge to the jury. See Tex. R. Civ. P.
274 ("Any complaint as to a question, definition, or instruction, on account of any defect, omission,
or fault in pleading, is waived unless specifically included in the objections."). Appellants' only
objection to the charge concerning English's claims was that no evidence supported submission of
questions No. 1 and No. 2. Appellants first complained about the inability of the verdict to support
joint and several liability in their motion for judgment notwithstanding the verdict. They reiterated
the complaint after judgment in their motion for new trial.

 We conclude that appellants preserved their right to raise the asserted error. Faced
with a similar situation, the San Antonio court of appeals held:


The error asserted is not that the jury questions themselves were defective, but that
the answers to those questions do not afford a reasonable basis upon which to enter
a judgment, as illustrated above. Because the focus of the error asserted is on the
judgment rather than the jury charge, error was properly preserved by J & C and
Gonzales's supplemental motion for judgment notwithstanding the verdict and
motions for new trial.



J & C Drilling Co. v. Salaiz, 866 S.W.2d 632, 640 (Tex. App.--San Antonio 1993, no pet.). Here,
the asserted error became manifest only when the court rendered judgment on the jury's findings in
a manner that appellants argue cannot be done. The court might have rendered judgment in ways
that avoided the asserted error. Therefore, appellants' motions for judgment notwithstanding the
verdict and for new trial were timely vehicles to complain that the verdict did not support a judgment
against the appellants jointly and severally. See id.

 Joint and several liability arises in contract based upon the relationship between the
parties and the existence of what amounts to joint promises. CTTI Priesmeyer, Inc. v. K & O Ltd.
P'ship, 164 S.W.3d 675, 684 (Tex. App.--Austin 2005, no pet.). Appellants complain that there is
no finding of such a relationship or joint promise in this case, nor is there any other pleading or
finding that would support joint and several liability such as conspiracy or alter ego. See Greenberg
Traurig, P.C. v. Moody, 161 S.W.3d 56, 90 (Tex. App.--Houston [14th Dist.] 2004, no pet.) (citing
Carroll v. Timmers Chevrolet, Inc., 592 S.W.2d 922, 926 (Tex. 1979)) (conspiracy can support joint
and several liability); see also Hart v. Moore, 952 S.W.2d 90, 99 (Tex. App.--Amarillo 1997, pet.
denied) (alter ego can support joint and several liability).

 However, the jury findings relating to the contract theory include a finding of a single,
or joint, agreement by appellants. Although Question No. 1 standing alone could be viewed as
ambiguous regarding the number of agreements English had with appellants, Question No. 3 makes
clear that a single agreement is under review by asking, "Did K-Bar Services, Inc., Brian Kalisek or
James Kalisek fail to comply with the agreement specified in Question No. 1?" (Emphasis added.) 
It is not phrased with plural "agreements" as an alternative or with the possibility of separate
agreements between English and individual appellants. Instructions for Question No. 3 reinforce this
interpretation: "Failure, if any, to comply by K-Bar Services, Brian Kalisek or James Kalisek is
excused by Michael English's previous failure to comply with a material obligation of the same
agreement. Failure, if any, to comply is excused if the agreement was made as the result of a mutual
mistake." (Emphasis added.) To the extent Question No. 1 can be viewed as ambiguous regarding
the number of agreements, it can be harmonized with the language of Question No. 3 as an inquiry
as to which of the three appellants were party to a single agreement with English.

 The existence of a single agreement is also consistent with language in English's
second amended original petition, which provides:


ENGLISH agreed with K-BAR and the KALISEKS to assist in the purchase, repair,
restoration and sale of various different automotive or motorized equipment. The
parties agreed that ENGLISH would be compensated at a reasonable fee for the work
which he performed . . . .


. . . . 


WHEREFORE, Plaintiff, MICHAEL ENGLISH prays that upon final trial ENGLISH
have judgment of and from Defendants, jointly and severally . . . .



Although there is no express pleading of a conspiracy or alter ego, English's petition never refers to
more than one agreement between himself and appellants. He pleaded only about "agreeing" with
appellants. Consistent with this theory of the case, he asked the trial court to render judgment
against each of the appellants jointly and severally based on joint promises as found by the jury. See
CTTI Priesmeyer, 164 S.W.3d at 684. We conclude that English pleaded, and the jury found, that
all three appellants made a single, joint agreement with English to provide services to them. Thus,
joint and several liability is supported by the pleadings and findings on the contract claims. See id.

 The finding with respect to the claim in quantum meruit is not as clear, and that
ambiguity potentially renders the answer to the unitary damages question ambiguous. In Question
No. 2, the court asks, "Did Michael English perform compensable work for K-Bar, Brian Kalisek
or James Kalisek?" The court instructed the jury on the elements of a claim in quantum meruit, an
equitable theory of recovery based on an implied agreement to pay for benefits received. See
Heldenfels Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992). The doctrine of
quantum meruit requires the plaintiff to establish that (1) valuable services and/or materials were
furnished, (2) to the party sought to be charged, (3) which were accepted by the party sought to be
charged, and (4) under such circumstances as reasonably notified the recipient that the plaintiff, in
performing, expected to be paid by the recipient. Id. Appellants argue, and we conclude, that the
question and affirmative answers are ambiguous regarding whether English provided extra work to
appellants individually or to the appellants jointly. Because Question No. 4 asks what damages
English suffered without distinguishing from what source the damages flow, the ambiguity regarding
the liability for the damages in quantum meruit causes the damages award to be ambiguous if we
look only at the jury's findings.

 The judgment of joint and several liability for all damages, however, shows that the
trial court made an implicit finding that English provided compensable services to the three
appellants jointly. An element of a cause of action omitted from a jury charge can be deemed found
if the submitted elements are found. Rule of civil procedure 279 provides as follows:


When a ground of recovery or defense consists of more than one element, if one or
more of such elements necessary to sustain such ground of recovery or defense, and
necessarily referable thereto, are submitted to and found by the jury, and one or more
of such elements are omitted from the charge, without request or objection, and there
is factually sufficient evidence to support a finding thereon, the trial court, at the
request of either party, may after notice and hearing and at any time before the
judgment is rendered, make and file written findings on such omitted element or
elements in support of the judgment. If no such written findings are made, such
omitted element or elements shall be deemed found by the court in such manner as
to support the judgment.



Tex. R. Civ. P. 279; see Ramos v. Frito-Lay, Inc., 784 S.W.2d 667, 668 (Tex. 1990).

 Joint and several liability is not an independent cause of action, but is a description
of the extent of an individual defendant's liability for harm that is caused by the individual defendant
together with others. Analogizing to a contract claim, joint and several liability is appropriate in
quantum meruit if the relationship of appellants and their actions support findings that they agreed
jointly to accept the benefits of English's labor knowing he expected to be paid for the work. Cf.
Heldenfels, 832 S.W.2d at 41 (elements of quantum meruit claim); CTTI Priesmeyer, 164 S.W.3d
at 684 (conditions necessary for joint and several liability on contract claim). The court submitted
the elements of a claim in quantum meruit to the jury. Any findings necessary to support imposition
of joint and several liability are elements of English's claim in quantum meruit and must be deemed
found in support of the judgment and upheld if the finding is supported by some evidence. See Tex.
R. Civ. P. 279; Ramos, 784 S.W.2d at 668.

 We conclude that the jury verdict and implied findings of omitted elements germane
to joint and several liability provide a sufficient basis for the judgment generally and the assessment
of joint and several liability against the appellants in particular.


Sufficiency of the evidence

 We next examine whether the evidence is legally and factually sufficient to support
the assessment of joint and several liability against appellants. Joint and several liability arises in
contract and, by extension, in quantum meruit, based upon the relationship between the parties and
the existence of what amounts to joint promises. CTTI, 164 S.W.3d at 684.

 In reviewing the legal sufficiency of the evidence, we view the evidence in the light
favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding
contrary evidence unless reasonable jurors could not. City of Keller v. Wilson, 168 S.W.3d 802, 807
(Tex. 2005). There is legally insufficient evidence or no evidence of a vital fact when (a) there is
a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence
from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to
prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the
opposite of the vital fact. Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997);
Patlyek v. Brittain, 149 S.W.3d 781, 785 (Tex. App.--Austin 2004, pet. denied). More than a
scintilla of evidence exists when the evidence supporting the finding, as a whole, "rises to a level
that would enable reasonable and fair-minded people to differ in their conclusions." Havner, 953
S.W.2d at 711 (quoting Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995)). If the
evidence is so weak as to do no more than create a mere surmise or suspicion of its existence, its
legal effect is that it is no evidence. Haynes & Boone v. Bowser Bouldin, Ltd., 896 S.W.2d 179, 183
(Tex. 1995).

 In reviewing a factual insufficiency point, we consider, weigh, and examine all the
evidence presented at trial. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). 
We set aside a finding for factual insufficiency only if it is so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

 Both the Kaliseks and the Englishes testified that the Kaliseks told English what
repairs they wanted performed. English originally dealt with James Kalisek, who eventually told him
to deal primarily with Brian Kalisek. Brian Kalisek testified that he never gave any vehicles to
English to repair without giving specific instructions on what was to be repaired. English testified
that he discussed the work needed in person when he picked up the vehicle or equipment and would
follow-up those conversations on the telephone. He testified that he occasionally did minor work
that was not discussed in advance, but consulted the Kaliseks before doing any major work. 

 The Kaliseks share control of K-Bar. James Kalisek owns 55% and appellant Brian
Kalisek owns 45% of the company. Both brothers are vice presidents of the company. In addition,
James's wife, Michelle, is the president, and Brian's wife, Sharon, worked for the company during
at least part of the time that the disputed events occurred. The record shows that James Kalisek and
Brian Kalisek have authority to speak for and bind K-Bar. The bulk of the equipment and vehicles
on which the disputed repairs were performed for which English seeks payment belonged to K-Bar
Services. James Kalisek testified that, at one point, English had about fifteen K-Bar trucks and
equipment pieces.

 Both Kaliseks were present when English demanded payment on the unpaid invoices. 
Aside from one mutually acknowledged payment, they have not paid English what he demanded. 
They regained possession of all of the equipment except for the two items they claimed were
converted. They justify their refusal to pay based on their asserted belief that English provided some
services in exchange for permission to use appellants' equipment, on the poor quality of his work
on some equipment, and on the debts they believe he owes them.

 We conclude that there is legally and factually sufficient evidence to support the
assessment of joint and several liability against K-Bar and the Kaliseks based on promises jointly
made to English. There is sufficient evidence to support a finding that James and Brian Kalisek,
individually and as officers and owners of K-Bar, authorized English to perform work and accepted
additional work performed on equipment that either belonged to K-Bar or was on the property where
K-Bar did business. (1) Although some evidence could support a view that the brothers each made
some agreements individually, the evidence is not overwhelmingly against a finding that the
relationship among appellants, the circumstances of the authorization for repairs, and appellants'
behavior following the authorization of repairs support the imposition of joint and several liability
against all three appellants based on joint promises made for damages both under the contract theory
and in quantum meruit.


Attorneys' fees

 Appellants contend that the trial court erred by failing to award them attorneys' fees. 
A party cannot recover attorneys' fees from an opposing party unless permitted by statute or by
contract between the parties. See Holland v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 95 (Tex. 1999).
Appellants argue that they are entitled to attorneys' fees under statutes permitting recovery of
attorneys' fees in suits for breach of an oral or written contract, concerning possession of a motor
vehicle, and for deceptive trade practices. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West
1997) (contract); Tex. Prop. Code Ann. § 70.008 (West 1995) (vehicle possession); see also Tex.
Bus. & Com. Code Ann. § 17.50(d) (West Supp. 2005) (deceptive trade practices act or DTPA). 
They claim attorneys' fees on the breach of contract and motor vehicle possession suit theories based
on the favorable jury finding with respect to their conversion claim. They alternatively argue that
they are entitled to attorneys' fees on a DTPA cause of action, which they assert they would have
prevailed on had the court presented a DTPA question to the jury.

 Appellants did not recover under a contract theory, but contend that their conversion
claim is sufficiently intertwined with contract issues that they can recover attorneys' fees on the
conversion claim. Conversion is not among the causes of action for which attorneys' fees are
available under section 38.001, and attorneys' fees ordinarily are not recoverable as part of a claim
for conversion. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001; Hageman/Fritz, Byrne, Head &
Harrison, L.L.P. v. Luth, 150 S.W.3d 617, 627 (Tex. App.--Austin 2004, no pet.). However,
appellants argue that they can receive an award of attorneys' fees if their claim was intrinsically
founded in the interpretation of a contract. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001; see also
First Nat'l Bank v. Gittelman, 788 S.W.2d 165, 171 (Tex. App.--Houston [14th Dist.] 1990, writ
denied). In Gittelman, the plaintiff prevailed on both conversion and breach of contract claims. 788
S.W.2d at 167. Noting that attorneys' fees were not available under the conversion claim, the
Houston court upheld the award of attorneys' fees based on a finding by the fact-finder of breach of
contract. Id. at 171.

 Appellants are not entitled to attorneys' fees based on their conversion claim. Unlike
in Gittelman, appellants did not recover under a breach of contract theory, and thus they are not
entitled to attorneys' fees based on breach of contract. See Tex. Civ. Prac. & Rem. Code Ann.
§ 38.001; see also Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997). Not only did
appellants not recover on their breach of contract theory, their conversion claim is not related to their
contract claim except that both claims concern the same truck. The conversion claim is not based
on the performance of the sale contract, but on events that occurred after the sale from English to
appellants was completed. After the sale of the truck was completed, appellants sought to rescind
it, but English retained the sale proceeds and sold the truck to another buyer. The court did not err
by refusing to award attorneys' fees based on the conversion claim.

 Nor did the court err by denying attorneys' fees under the statute providing that "[t]he
court in a suit concerning possession of a motor vehicle . . . and a debt due on it may award
reasonable attorneys' fees to the prevailing party." Tex. Prop. Code Ann. § 70.008 (West 1995). 
This section is in a subchapter of the property code containing statutes providing for the creation of
and foreclosure on liens favoring persons who repair vehicles, repair or clean garments, and provide
space to keep animals, vehicles, or crops. See id. §§ 70.001-.007 (West 1995 & Supp. 2005). No
party claims to have held a lien on the truck under any of these sections. Further, this conversion
claim is not a suit for possession of or for a debt on a motor vehicle. Appellants did not want to
possess the truck. English did not incur a debt in order to purchase the truck, although he admittedly
failed to return the sale proceeds when the truck was returned to him. We are not persuaded that this
claim is within the purview of section 70.008.

 Finally, appellants complain that the trial court prevented them from recovering
attorneys' fees under the DTPA by failing to submit a jury issue relating to their DTPA claim. They
argue that if a DTPA issue had been submitted and if they had prevailed on it, they would be entitled
to an award of attorneys' fees based on such a finding. (2) Appellants' theory on appeal is that the court
should have submitted a DTPA question based on evidence that English misrepresented to them that
the 1986 pickup they purchased from English would go a certain speed when, according to Brian
Kalisek, it would not. However, appellants do not have a pleading to support the submission of such
a jury issue. Appellants made three specific complaints that could arguably be related to a DTPA
cause of action: (1) unauthorized repairs by English, (2) his failure to return or deliver vehicles, and
(3) his unauthorized purchase of a vehicle for appellants. (3) There is no assertion or even a general
pleading to support a complaint that English misrepresented that a good he sold appellants had a use
or characteristic that it did not have--i.e., that the 1986 pickup would not go above a certain speed. 
Thus, appellants do not have a pleading to support submission of a DTPA issue relating to a sale of
the 1986 pickup 

 This view of appellants' pleadings is supported by the form of the DTPA question
that they proposed and which the trial court refused to submit. The proposed question would have
submitted issues relating only to English's representations as to his agreement to provide services
to appellants and his provision of those services to appellants. The proposed question makes no
mention of the 1986 pickup, a sale of any vehicle or good, or conduct by English in the sale of a
good to appellant. Consequently, in addition to the absence of a pleading that would support a
DTPA submission relating to a good sold to appellants by English, there is no proposed jury question
in substantially correct form regarding misrepresentations about a good sold. See Tex. R. Civ. P.
278. The proposed jury question simply does not address a misrepresentation by English in
connection with the sale of any good and, accordingly, it does not preserve any such error for appeal. 
See id; see also Tex. R. App. P. 33.1(a). The trial court did not err in failing to submit a DTPA-related jury question based on evidence that English misrepresented the maximum speed of the 1986
pickup because the court was not asked to do so. Thus, appellants were not erroneously denied
attorneys' fees by the trial court's refusal to submit such a DTPA issue.

 We conclude that the imposition of joint and several liability is supported by legally
and factually sufficient evidence in the record and by the jury verdict. We find no error in the trial
court's refusal to award attorneys' fees to appellants. We affirm the judgment.



 

 G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed: April 7, 2006

1. The damage finding of $5,410.92 is less than the total amount English claimed he was
owed, indicating that the jury did not accept some of his charges or found that they were not owed
under the parties' agreement.
2. A consumer who prevails on a claim under the deceptive trade practices act is entitled to
attorneys' fees. See Tex. Civ. Prac. & Rem. Code Ann. § 17.50(d).
3. Although appellants do not expressly refer to the DTPA in their pleadings, they do
complain that English "made numerous representations which were false, misleading, and
deceptive." Interpreting this pleading as stating a claim under the DTPA, we note that appellants
were quite specific as to what they alleged constituted the false or deceptive acts by English.