# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00051-CV

**CTTI Priesmeyer, Inc. formerly known as
Central Texas Tiltwall, Inc., Appellant**

**v.**

**K&O Limited Partnership, a Texas Limited Partnership, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
## NO. GN001816, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## O P I N I O N

The owner of an office and warehouse, K&O Limited Partnership, sued the general contractor, CTTI Priesmeyer, Inc., and others for cracks that developed in the concrete slab foundation of its building.[1] Prior to trial, K&O settled with all defendants except CTTI and Duke Garwood Architects, Inc. The jury found CTTI liable for breach of contract, and Garwood liable for its negligence. During trial, K&O entered into a high-low settlement agreement with Garwood. The trial court entered judgment on the verdict against CTTI and denied any settlement credits.

CTTI raises five issues urging that, as a matter of law, the parties' subsequent contract regarding repair of the cracks in the slab was a novation of the original contract warranting the

---

[1] CTTI Priesmeyer, Inc. was known as Central Texas Tiltwall, Inc. at the time of the contract.

building, or in the alternative, that the jury's failure to find novation was against the great weight and preponderance of the evidence. CTTI also relied on the "one satisfaction rule" to claim that it was entitled to settlement credits. We hold that the novation issue was properly submitted to the jury and that the great weight of the evidence does not preponderate against the jury's verdict. Furthermore, we rely on the supreme court's ruling in *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378 (Tex. 2000), to hold that the trial court properly denied the settlement credits because tortfeasors cannot be jointly and severally liable for contract damages, and that other contract defendants are only jointly and severally liable for breaches of contracts to which they are a party or that promise the same performance. We affirm the judgment of the district court.

## BACKGROUND

In 1997, K&O entered into a contract with CTTI for the construction of an office and warehouse building. K&O also entered into a contract with Duke Garwood Architects, Inc. to serve as the architect on the project. As such, Garwood's plans and specifications were incorporated as part of the overall contract documents. The source of the controversy in this case is the building's slab foundation that CTTI poured in the summer of 1997. Construction was substantially completed in October 1997, and K&O moved into the facility at the end of that month.

Cracks in the slab appeared as early as late August 1997, and continued to increase in both size and number as the building was occupied and used. K&O consulted with CTTI, Duke Garwood, and John Buford, the project's engineer, regarding the cracks; they were told that the cracks were typical for a slab of that size. Buford recommended that K&O contact a concrete repair expert. The repair expert confirmed that the cracks were the typical result of concrete shrinkage and

2

recommended that K&O wait about four to five months for the slab to cure completely. The expert recommended that after the slab had cured, epoxy be applied to repair the cracks. K&O obtained an estimate of $182,000 as the cost to complete such repairs.

Pursuant to the expert's report and recommendations, K&O and CTTI entered into a new agreement in April 1998, in which CTTI agreed to make the recommended epoxy repairs in return for K&O's final completion payment. Whether this new repair agreement was a novation of the original agreement is at issue on appeal. The agreement detailed the necessary repairs to the slab floor, and provided, in pertinent part:

> "The work of this Agreement is subject to all terms of the General Conditions of the Contract for Construction (a part of the Construction Contract between the parties) (the "General Conditions") with the exception of the payments provision of such General Conditions."
>
> and
>
> "Notwithstanding the terms of the parties' Construction Contract dealing with resolution of disputes, it is the parties' agreement that this Agreement shall govern the resolution of their dispute regarding correction of cement floor slab problems in lieu of arbitration. All other terms of such Construction Contract shall apply to the extent practical."

CTTI repaired a test area in December 1998, but never repaired the entire slab. As the slab continued to deteriorate, K&O became convinced that the recommended repairs would not stop the deterioration. K&O again consulted a concrete repair expert regarding the condition of the slab. This time the engineers and experts agreed that the slab had been improperly designed and constructed. The testimony at trial indicated that multiple factors contributed to the problems with the slab. Some of the problems were design related, such as the improper spacing of control joints

3

and insufficient designated concrete strength. Other factors were related to the construction of the slab, such as misplacement of rebar and the use of materials other than those designated in the plans and specifications.

K&O filed suit in October 1999 against CTTI, Garwood, Commercial Indemnity Insurance Company (the surety on the repair contract), and MLA Labs, Inc. (the geotechnical firm that had performed testing on the site). K&O later joined Burris Construction, Inc., the subcontractor who provided the fill material for the slab base. CTTI joined John Buford, the project engineer, as a third-party defendant. Prior to trial, K&O settled with the surety, the geotechnical firm, and the fill subcontractor, and such settlements were read into the record at trial. Trial proceeded against CTTI, Garwood and Buford in April 2003. K&O alleged that CTTI breached both the original construction contract and the subsequent repair contract. K&O reached a high-low settlement agreement with Garwood before the case was submitted to the jury.

Nine questions were submitted to the jury, of which four are the subject of this appeal: Question 1—Did CTTI fail to comply with the construction contract; Question 2—Was CTTI's failure to comply excused by a new agreement; Question 3—What damages flow from a positive answer to question 1 and a negative answer to question 2; and Question 6—What reasonable attorneys' fees arise from a finding of breach of contract. Although K&O alleged in its pleadings that CTTI had breached the repair agreement, a question as to that breach was not submitted to the jury, and K&O did not object to such omission.

The jury found that CTTI had breached the construction contract, that CTTI's breach was not excused by the repair agreement, and that Buford and Garwood were negligent. On the basis

4

of its findings the jury awarded K&O $561,750 for CTTI's breach of contract and $400,000 for attorneys' fees. The jury also awarded K&O $187,250 for Garwood and Buford's negligence, and further determined that 70% of the negligence that caused the damages was attributable to Garwood and 30% attributable to Buford. However, under the high-low agreement, K&O settled with Garwood for $190,000 for negligence damages. The trial court entered judgment on the verdict awarding K&O a total of $1,071,714.48 from CTTI. This amount included prejudgment and postjudgment interest, as well as attorneys' fees and court costs; the trial court refused to grant CTTI any settlement credits. This appeal followed.

## DISCUSSION

### Standard of Review

CTTI raises five issues on appeal. Four of CTTI's issues are raised as matters of law. CTTI's second issue is a factual sufficiency point.

When reviewing a party's assertion that its claim or defense was established as a matter of law, and where a jury has made an adverse finding of fact on that issue, we apply a special analysis. *See Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982). We must first examine the record for evidence that supports the court's findings, while ignoring all evidence to the contrary. *Id.* If there is no evidence to support the fact-finder's conclusion, then the entire record must be examined to see if the contrary proposition is established as a matter of law. *Id.*

When reviewing a factual sufficiency challenge, we must assess all of the evidence and may not substitute our judgment for that of the trier of fact. When the challenge is to a finding on which the prevailing party had the burden of proof, we may reverse the judgment only if the

5

challenged finding shocks the conscience or clearly shows bias, or if the favorable evidence is so weak as to make the judgment clearly wrong and manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex. 1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). If the challenge is to an adverse finding, or failure to find, on which the appellant had the burden of proof, we may reverse only if the failure to find is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Ames v. Ames*, 776 S.W.2d 154, 158 (Tex. 1989); *Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 651 (Tex. 1988).

**Novation**

In its first two issues, CTTI contends that the repair agreement was a novation of the original contract as a matter of law, and in the alternative, that the jury's failure to find a novation was against the great weight and preponderance of the evidence. The party urging novation as a defense bears the burden of proof. *Honeycutt v. Billingsley*, 992 S.W.2d 570, 576 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). Thus, CTTI had the burden to prove (1) the validity of the previous obligation; (2) an agreement among all parties to accept a new contract; (3) the extinguishment of the previous obligation; and (4) the validity of the new agreement. *Vickery v. Vickery*, 999 S.W.2d 342, 356 (Tex. 1999); *Fulcrum Central v. Autotester, Inc.*, 102 S.W.3d 274, 277 (Tex. App.—Dallas 2003, no pet.). A court may infer that a new agreement is a novation of an earlier agreement when the new agreement is so inconsistent with the earlier agreement that the two agreements cannot subsist together. *Fulcrum Central*, 102 S.W.3d at 277; *Scalise v. McCallum,* 700 S.W.2d 682, 684 (Tex. App.—Dallas 1985, writ ref'd n.r.e).

6

Where there are no inconsistent provisions, "a second contract will operate as a novation of a first contract only when the parties to both contracts intend and agree that the obligations of the second shall be substituted for, and operate as a discharge of, the obligations of the first." *Chastain v. Cooper & Reed*, 257 S.W.2d 422, 424 (1953). A new agreement can establish novation as a matter of law when the state of the evidence is such that reasonable minds cannot differ as to its effect. *Id.* Whether a later agreement works a novation of an earlier one is a question of intent. *Allstate Ins. Co. v. Clark*, 471 S.W.2d 901, 907 (Tex. Civ. App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.). The intent must be clear; novation is never presumed. *Id.*

CTTI contends that the language of the repair contract is unambiguous and conclusively establishes that CTTI and K&O intended the repair contract to replace the construction contract with respect to the defective slab. While we agree that the repair contract is unambiguous, we find that the repair contract and the original contract do not have inconsistent provisions. Rather, the provisions regarding the specific steps to be taken to complete the repairs supplement the terms of the original construction contract. Other provisions expressly incorporate the terms of the original contract. The only significant modification to the original contract was the provision stating that any disputes over the repair of the slab would not be subject to the binding arbitration provision of the original contract.

A novation occurs if a contract evidences an intention to relinquish and extinguish pre-existing claims and rights of action. Here, the repair contract does not extinguish all claims of the previous contract, as CTTI argues, but instead incorporates and reaffirms the rights under that contract to the extent feasible. An agreement to make final payment upon completion of the repairs

7

and not to require arbitration for any dispute over that repair is not inconsistent with the general terms of the original contract. The most important of these terms, that CTTI warrants delivery of a defect-free building, is in fact referenced at least twice in the repair agreement, with the clear intention of maintaining its applicability to the extent possible. Paragraph 3(b) of the repair contract states, "It is the understanding of the parties that such work should approximate (as close as possible) the standard originally intended by contract." Paragraph 5 states that "[a]ll other terms of such Construction Contract shall apply to the extent practical." These statements address the possibility that even after the repair work, the building might not meet the defect-free standard warranted in the original contract. The statements serve to allow variation from the warranty to the extent necessary but no further. They clearly evidence the intention that the original contract remain in force to the extent possible.

We agree with K&O that the two contracts on the whole addressed different issues: the original contract covered the entire construction process and warranted the final product, while the repair contract covered only the repair of cracks in the slab foundation. The new contract merely represented the parties' agreement as to how to resolve the dispute over repair of the cracked slab in lieu of arbitration. Because there is no express language of novation and no inconsistent provision in the repair agreement, we find that CTTI can not surmount the first hurdle, that there is no evidence to support the jury's conclusion that the repair contract was not a novation of the original contract. *See Holley*, 629 S.W.2d at 969. That being the case, we need not examine the record to determine if CTTI's proposition is established as a matter of law; the issue was properly submitted to the jury.

8

In the alternative, CTTI argues that the jury's failure to find novation is against the great weight and preponderance of the evidence. This is a challenge to the factual sufficiency of the evidence. In the absence of inconsistent provisions, we look to the intent of the parties to determine novation. *Allstate Ins. Co.,* 471 S.W.2d at 907; *see also Scalise,* 700 S.W.2d at 684 (stating that only where terms are inconsistent may novation be inferred). The intent of the parties is always a question of fact. *See Chastain,* 257 S.W.2d at 424 (in the absence of an express agreement as to the intent of the parties, intent is a question of fact unless the state of the evidence is such that reasonable minds could not differ).

The evidence and testimony presented at trial provided ample support for the jury's decision that the repair contract was not a novation and did not excuse CTTI's performance under the original contract. Mr. O'Hearn, a 50% owner of K&O, testified that K&O intended the repair contract to allow the parties to resolve the existing dispute over the slab without having to arbitrate, and that there was no intention to relieve CTTI of the warranty provided in the original contract. Specifically, he stated that in light of the fact that the slab, at the time of the repair agreement, was less than one year old, K&O was not in a position to release CTTI from any warranty work. This testimony, combined with the terms of both contracts, cannot be held to be so weak as to preclude an adverse finding on the issue of novation. There was contrary testimony presented by both parties that the agreement was intended to govern the entire dispute over the repair of the slab. However, there was also disagreement as to what was covered by the "dispute regarding correction of the cement floor slab problems." There was some question as to whether it covered all potential disputes over the slab or just the dispute in existence at the time of the agreement. Where there are

9

inconsistencies in the testimony presented at trial, it is the jury as fact-finder that is the sole judge of the credibility of witnesses and the weight to be afforded the testimony. *Lyva v. Pacheco*, 358 S.W.2d 547, 549 (Tex. 1962). The jurors may resolve for themselves any inconsistencies by choosing to believe one witness and disbelieve another. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). This Court may not second guess or substitute our judgment for that of the trier of fact. *Pool*, 715 S.W.2d at 634.

CTTI also argues that the basic tenets of contract interpretation must be applied in this case. Particularly, CTTI argues that because the repair contract is not ambiguous, parole evidence regarding the parties' intent should be inadmissible, and that if there is any ambiguity, it should be resolved against K&O as the drafter of the agreement. *See AT&T Corp. v. Rylander,* 2 S.W.3d 546, 559 (Tex. App.—Austin 1999, pet. denied) (stating general rule that document is construed strictly against author). While these principles of contract interpretation are accurately stated, they do not serve to relieve a party asserting novation of the burden of proving an essential element of that defense. CTTI still must prove the existence of a mutual agreement to form a new contract that extinguishes the old contract. In this case, if we were to find ambiguity and resolve it against K&O, CTTI has still failed to establish the intent element of its defense. *See Computed Imaging Serv., Inc. v. Fayette Mem'l Hosp.*, 2001 Tex. App. LEXIS 183, at \*9 (Tex. App.—Austin, Jan. 11, 2001, no pet.) (not designated for publication) (after resolving any ambiguities in contract against drafter, if existence of mutual agreement to form new contract is not proven, defense of novation has failed).

10

By virtue of the nature of the agreement's language, the actions of the parties, and the testimony at trial, reasonable minds could differ over whether the requisite intent was shown. *Ames*, 776 S.W.2d at 158; *Cropper*, 754 S.W.2d at 651. Because we find that CTTI could not establish novation as a matter of law and that there was ample evidence to support the jury's failure to find a novation, we overrule CTTI's first and second issues.

**Settlement Credits**

In its third and fifth issues, CTTI contends that it is entitled to settlement credits under the "one satisfaction rule." It argues that because the conduct of both CTTI and the settling defendants combined to cause a single, indivisible injury of a defective slab, it is entitled to credits against its judgment for all undisputed settlements.[2] K&O counters that under the holding in *Hunt v. Ellisor & Tanner*, CTTI is not entitled to settlement credits. *See* 739 S.W.2d 933, 938 (Tex. App.—Dallas 1987, writ denied). The court in *Hunt* held that a claim for breach of contract does not give rise to comparative causation. *Id.* Based on the supreme court's more recent discussion of the one satisfaction rule, we reach a similar conclusion.

The one satisfaction rule is the longstanding proposition that a plaintiff should not be compensated twice for the same injury. *See Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 7 (Tex. 1991); *Bradshaw v. Baylor Univ.*, 84 S.W.2d 703, 705 (Tex. 1935). The supreme court has addressed the issue of settlement credits in relation to the one satisfaction rule on several occasions since the *Hunt* opinion. In *Stewart Title*, the court noted that where all tortfeasors caused a single,

---

[2] In its fifth issue, CTTI contends in the alternative that it is entitled to a credit for only those settlements made pretrial.

11

indivisible injury to the plaintiff, even though their acts were technically different, the non-settling defendant would be entitled to a settlement credit so as to prevent the plaintiff from obtaining more than one recovery for the same injury. *Id.* It is important to note that all defendants in *Stewart Title*, including the settling parties, were tortfeasors. *See also First Title Co. of Waco v. Garrett*, 860 S.W.2d 74, 79 (Tex. 1993) (holding that if multiple tortfeasors have contributed to whole of indivisible injury, non-settling party is entitled to settlement credits).

More recently, the supreme court discussed settlement credits in *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d at 391-92:

> Under the one satisfaction rule, the nonsettling defendant may only claim a credit based on the damages for which all tortfeasors are jointly liable. . . . the nonsettling defendant is entitled to offset any liability for joint and several damages by the amount of common damages paid by the settling defendant, but not for any amount of separate or punitive damages paid by the settling defendant.

*Id.* The court's use of the words "tortfeasor" and "liability" leads us to conclude that the one satisfaction rule applies only to tort claims, not to breach of contract claims. The supreme court's further insistence that a nonsettling defendant receive settlement credits only for settlements based on damages for which there is joint and several liability confirms this understanding. It is also telling that while Texas has four different contribution schemes, each is only applicable to particular types of tort claims and not to contract claims. *See First Title Co. of Waco*, 860 S.W.2d at 78.

Joint and several liability arises in tort claims based on the conduct of the tortfeasors and the nature of the injury. "If the independent tortious conduct of two or more persons is a legal cause of an indivisible injury, each person is jointly and severally liable for the recoverable damages

12

*caused by the tortious conduct."* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § A18 (2000) (emphasis added); *see also* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY §10, cmt. b (2000) (explaining that joint torts are defined as those committed by multiple defendants acting in concert to cause indivisible injury). Texas has adopted a threshold version of this general rule in its proportionate responsibility statute, whereby in order to recover at all, a plaintiff must not be more than 50% responsible for the injury suffered. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.001 (West 1997). Additionally, the statute requires that the trier of fact determine the percentage of responsibility of each claimant, defendant, settling person, and responsible third party. *See id*. § 33.003 (West Supp. 2004-05). The same chapter addresses rights to contribution for the various parties, including rights to offsets to reflect settlements with other parties. *See id*. § 33.012 (West Supp. 2004-05). These statutes apply when the cause of action is based in tort. *See id*. § 33.002(a) (West Supp. 2004-05).

By contrast, joint and several liability arises in contract based upon the relationship between the parties and the existence of what amounts to joint promises. *See* RESTATEMENT (SECOND) OF CONTRACTS § 13 IN NT (1981) (more common usage of joint and several liability refers to rights and duties created by promises of same performance). In the case where multiple factors combined to produce the plaintiff's injury, there are different approaches in the tort and contract fields. In tort, when the torts of others were contributing factors, they may be held to be "joint tortfeasors," each liable for the whole loss or harm. 11-55 CORBIN ON CONTRACTS § 999 (2004). "In the contract field, however, if the acts of others (whether wrongful or not) are

13

contributing factors, those others are not thereby joined with the defendant as having committed the breach of contract." *Id.*

We acknowledge that there are cases in which the courts have applied the one satisfaction rule and granted settlement credits or required an election of remedies where there are co-existing tort and contract claims. *See Burke v Union Pac. Res. Co.,* 138 S.W.3d 46 (Tex. App.—Texarkana 2004, pet. filed); *Oyster Creek Fin. Corp. v. Richwood Inv. II, Inc.*, No. 01-02-00788, 2004 Tex. App. LEXIS 7269 (Tex. App.—Houston [1st Dist.] Aug. 12, 2004, pet. denied); *Goose Creek Consol. Indep. School Dist. v. Jarrar's Plumbing, Inc.*, 74 S.W.3d 486 (Tex. App.—Texarkana 2002, pet. denied). In those cases, the courts have focused on the indivisible nature of the injury to the plaintiffs, and have not discussed the requirement of joint liability. We find that focus to be misplaced and decline to follow those decisions. *See* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 26, cmt. g (2000) (indivisible nature of the injury is only the proper inquiry where the contributing factors are all actions of the plaintiff and *tortfeasors*). If we were to hold that, due to the indivisible nature of the resulting injury, breach of contract defendants and tort defendants are jointly and severally liable for all damages, we would be forced to hold a person not a party to a contract liable for the breach of that contract.

CTTI contracted with K&O directly. That contract specifically included a promise to deliver a defect-free building. While other defendants also had contracts with K&O, none of those contracts made the promise which is the subject of this cause of action—that K&O receive a defect-free building. Therefore, even if the pre-trial settlements with other parties were to settle separate contract claims, those contracts did not promise the same performance as CTTI. Thus, there can be

14

no joint and several liability between the various contracting parties. *See* RESTATEMENT (SECOND) OF CONTRACTS § 13 IN NT (1981). Garwood may have made a promise to provide architectural and supervisory services, but it did not make a promise to deliver a defect-free building. It therefore did not promise the same performance to K&O as CTTI, precluding joint and several liability. Moreover, the jury found Garwood did not breach its contract but was liable only for its own negligence. The settlement therefore covered damages caused by Garwood's negligence, which by definition involves no promise whatsoever.

The supreme court's decision in *Crown Life* is controlling in this case and requires that settlement credits be applied only if the parties were jointly and severally liable for the damages. *See Crown Life Ins. Co.*, 22 S.W.3d at 391-92. Because tortfeasors cannot be jointly and severally liable for contract damages, and other contract defendants are only jointly and severally liable for breaches of contracts to which they are a party or that promise the same performance, we overrule CTTI's third and fifth issues and affirm the trial court's decision to deny any settlement credits.[3]

Having overruled CTTI's claim for settlement credits, we need not address the complaint raised in its fourth issue regarding attorneys' fees.

---

[3] CTTI argues that once it put the settlements into the record, it satisfied its burden to prove its right to a settlement credit. *See First Title Co. of Waco v. Garrett,* 860 S.W.2d 74, 78-79 (Tex. 1993). The burden then shifts, it argues, to K&O to allocate the settlement between those damages for which CTTI was jointly liable and those for which the settling party was separately liable. *See Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 927-28 (Tex. 1998) (holding that after defendant put settlements into record, plaintiff then had burden of allocating settlements between damages for which nonsettling defendant was jointly liable and punitive damages, for which there is not joint liability; if plaintiff fails to allocate, defendant receives credit for full amount of settlement). This burden shifting applies only where there are at least some damages for which there could be joint and several liability. Because we find that there can be no damages for which CTTI is jointly liable with other settling parties, K&O had no burden to allocate the settlements.

15

**CONCLUSION**

Having found that the question of novation was properly submitted to the jury, that the jury's verdict was not against the great weight and preponderance of the evidence, and that CTTI was not entitled to any settlement credits, we affirm the judgment of the district court.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   May 5, 2005

16