# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00076-CV

**K-Bar Services, Inc.; Brian Kalisek and James Kalisek, Appellants**

**v.**

**Michael English, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 1 OF COMAL COUNTY
### NO. 99CV-276, HONORABLE BRENDA CHAPMAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

K-Bar Services, Inc., Brian Kalisek, and James Kalisek appeal the portions of a judgment denying them attorneys' fees and awarding damages to Michael English. The court awarded English damages for work he performed, but for which he was not paid. The dispute was tried to a jury. Appellants contend that the jury's findings and the record do not support the judgment assessing liability jointly and severally against them. They also complain that the trial court erred by failing to award them attorneys' fees for the conversion claim on which they prevailed. We affirm the judgment.

**Facts and Procedural Background**

The Kaliseks own and operate K-Bar Services, Inc., which provides road maintenance and repair services that require the use of trucks and heavy equipment. The Kaliseks' cousin, Judy

English, is married to Appellee Michael English. Appellee repaired appellants' equipment and also sold some of it. No written agreement governs the arrangement between the parties.

After English was not paid for some of his work, he sued appellants for breach of contract and in quantum meruit. Appellants asserted that English's use of the equipment was his agreed compensation. They also contended that English failed to complete some of the agreed work and performed some work inadequately. Appellants counterclaimed for conversion, fraud, and breach of contract, alleging that English performed unauthorized work, failed to return vehicles belonging to appellants, and sold property belonging to appellants without giving them the proceeds of the sale.

The jury found partly for and partly against both sides. It found that appellants owed English $5,410.92 in damages for uncompensated work. It also found that all three appellants failed to comply with agreements with English and accepted his work outside those agreements without compensating him for it. The jury also found English owed appellants $4,500 for conversion of their 1986 Ford pickup. They found that a reasonable fee for English's attorney was $11,589.91 for trial work, with up to $4,000 for appeals. The jury also found that a reasonable fee for appellants' attorney was $10,500 for trial, with up to $4,000 for appeals.

Appellants filed a motion for judgment notwithstanding the verdict. In addition to urging that English should not get attorneys' fees and that they should get attorneys' fees, appellants contended that the verdict was ambiguous regarding individual liability. Appellants argued that the verdict provided no legal basis for joint and several liability and provided no way to determine the proportionate liability of appellants.

2

The court awarded English $11,410.92—an amount equal to the $5,410.92 award for uncompensated work, less $4,500 for the value of the property converted, plus $10,500 for attorneys' fees—as well as prejudgment interest and contingent attorneys' fees in the event of appeal. The court imposed liability jointly and severally against all three appellants. The court denied all other relief generally, including appellants' request for attorneys' fees.

Appellants filed a motion to modify and a motion for new trial, urging variations on the issues presented in their motion for judgment notwithstanding the verdict. They added assertions that the jury questions failed to differentiate among agreements with or services provided to benefit one appellant to the exclusion of others. Appellants reiterated that the verdict did not support either individual damage awards or joint and several liability. The court denied the motions.

Appellants contend that the jury verdict and the record do not support the award of damages jointly and severally against appellants. They argue that the verdict is inadequate because the jury did not necessarily find that all three appellants breached the same promises to English and because the submission of a single question on damages does not provide a basis on which to determine the damages awarded against the individual appellants. They also argue that insufficient evidence supports assessing liability jointly and severally against them. Finally, they contend that the trial court erred by failing to award attorneys' fees to appellants for the conversion claim on which they prevailed.

**Adequacy of the jury charge**

Review of the jury charge reveals that the questions concerning appellants' liability are posed in the disjunctive with respect to the actions of each individual appellant, but the damages

3

question requests a single answer regarding the amount needed to compensate English. Question No. 1 inquires whether "English and K-Bar Services, Brian Kalisek and/or James Kalisek agree[d] that Michael English would perform work for any or all of them in exchange for compensation?" Question No. 2 asks whether English performed compensable work for K-Bar, Brian Kalisek or James Kalisek that was not pursuant to any agreement. Question No. 3 asks, "Did K-Bar Services, Inc., Brian Kalisek or James Kalisek fail to comply with the agreement specified in Question No. 1?" These three questions have separate answer blanks for each appellant, all nine of which the jury filled with the answer, "Yes." Question No. 4 asked "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Michael English for the work performed?" The single answer to this question was $5,410.92.

Appellants argue that these answers do not support joint and several liability by all appellants for the full $5,410.92 award or disclose the relative liability of appellants individually. They complain that, although the jury found that each appellant breached an agreement with English and that English performed uncompensated work for each appellant outside of any agreement, there is no jury finding that supports assessing all of the damages against all appellants jointly and severally.

English contends that appellants waived their right to raise this issue on appeal because they did not raise it before the court submitted the charge to the jury. *See* Tex. R. Civ. P. 274 ("Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections."). Appellants' only objection to the charge concerning English's claims was that no evidence supported submission of

4

questions No. 1 and No. 2. Appellants first complained about the inability of the verdict to support joint and several liability in their motion for judgment notwithstanding the verdict. They reiterated the complaint after judgment in their motion for new trial.

We conclude that appellants preserved their right to raise the asserted error. Faced with a similar situation, the San Antonio court of appeals held:

> The error asserted is not that the jury questions themselves were defective, but that the answers to those questions do not afford a reasonable basis upon which to enter a judgment, as illustrated above. Because the focus of the error asserted is on the judgment rather than the jury charge, error was properly preserved by J & C and Gonzales's supplemental motion for judgment notwithstanding the verdict and motions for new trial.

*J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632, 640 (Tex. App.—San Antonio 1993, no pet.). Here, the asserted error became manifest only when the court rendered judgment on the jury's findings in a manner that appellants argue cannot be done. The court might have rendered judgment in ways that avoided the asserted error. Therefore, appellants' motions for judgment notwithstanding the verdict and for new trial were timely vehicles to complain that the verdict did not support a judgment against the appellants jointly and severally. *See id*.

Joint and several liability arises in contract based upon the relationship between the parties and the existence of what amounts to joint promises. *CTTI Priesmeyer, Inc. v. K & O Ltd. P'ship*, 164 S.W.3d 675, 684 (Tex. App.—Austin 2005, no pet.). Appellants complain that there is no finding of such a relationship or joint promise in this case, nor is there any other pleading or finding that would support joint and several liability such as conspiracy or alter ego. *See Greenberg*

*Traurig, P.C. v. Moody*, 161 S.W.3d 56, 90 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 926 (Tex. 1979)) (conspiracy can support joint and several liability); *see also Hart v. Moore*, 952 S.W.2d 90, 99 (Tex. App.—Amarillo 1997, pet. denied) (alter ego can support joint and several liability).

However, the jury findings relating to the contract theory include a finding of a single, or joint, agreement by appellants. Although Question No. 1 standing alone could be viewed as ambiguous regarding the number of agreements English had with appellants, Question No. 3 makes clear that a single agreement is under review by asking, "Did K-Bar Services, Inc., Brian Kalisek or James Kalisek fail to comply with *the agreement* specified in Question No. 1?" (Emphasis added.) It is not phrased with plural "agreements" as an alternative or with the possibility of separate agreements between English and individual appellants. Instructions for Question No. 3 reinforce this interpretation: "Failure, if any, to comply by K-Bar Services, Brian Kalisek or James Kalisek is excused by Michael English's previous failure to comply with a material obligation of *the same agreement*. Failure, if any, to comply is excused if *the agreement* was made as the result of a mutual mistake." (Emphasis added.) To the extent Question No. 1 can be viewed as ambiguous regarding the number of agreements, it can be harmonized with the language of Question No. 3 as an inquiry as to which of the three appellants were party to a single agreement with English.

The existence of a single agreement is also consistent with language in English's second amended original petition, which provides:

> ENGLISH agreed with K-BAR and the KALISEKS to assist in the purchase, repair, restoration and sale of various different automotive or motorized equipment. The

6

> parties agreed that ENGLISH would be compensated at a reasonable fee for the work which he performed . . . .
>
> . . . .
>
> WHEREFORE, Plaintiff, MICHAEL ENGLISH prays that upon final trial ENGLISH have judgment of and from Defendants, jointly and severally . . . .

Although there is no express pleading of a conspiracy or alter ego, English's petition never refers to more than one agreement between himself and appellants. He pleaded only about "agreeing" with appellants. Consistent with this theory of the case, he asked the trial court to render judgment against each of the appellants jointly and severally based on joint promises as found by the jury. *See CTTI Priesmeyer*, 164 S.W.3d at 684. We conclude that English pleaded, and the jury found, that all three appellants made a single, joint agreement with English to provide services to them. Thus, joint and several liability is supported by the pleadings and findings on the contract claims. *See id*.

The finding with respect to the claim in quantum meruit is not as clear, and that ambiguity potentially renders the answer to the unitary damages question ambiguous. In Question No. 2, the court asks, "Did Michael English perform compensable work for K-Bar, Brian Kalisek or James Kalisek?" The court instructed the jury on the elements of a claim in quantum meruit, an equitable theory of recovery based on an implied agreement to pay for benefits received. *See Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). The doctrine of quantum meruit requires the plaintiff to establish that (1) valuable services and/or materials were furnished, (2) to the party sought to be charged, (3) which were accepted by the party sought to be charged, and (4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient. *Id*. Appellants argue, and we conclude, that the

7

question and affirmative answers are ambiguous regarding whether English provided extra work to appellants individually or to the appellants jointly. Because Question No. 4 asks what damages English suffered without distinguishing from what source the damages flow, the ambiguity regarding the liability for the damages in quantum meruit causes the damages award to be ambiguous if we look only at the jury's findings.

The judgment of joint and several liability for all damages, however, shows that the trial court made an implicit finding that English provided compensable services to the three appellants jointly. An element of a cause of action omitted from a jury charge can be deemed found if the submitted elements are found. Rule of civil procedure 279 provides as follows:

> When a ground of recovery or defense consists of more than one element, if one or more of such elements necessary to sustain such ground of recovery or defense, and necessarily referable thereto, are submitted to and found by the jury, and one or more of such elements are omitted from the charge, without request or objection, and there is factually sufficient evidence to support a finding thereon, the trial court, at the request of either party, may after notice and hearing and at any time before the judgment is rendered, make and file written findings on such omitted element or elements in support of the judgment. If no such written findings are made, such omitted element or elements shall be deemed found by the court in such manner as to support the judgment.

Tex. R. Civ. P. 279; *see Ramos v. Frito-Lay, Inc.*, 784 S.W.2d 667, 668 (Tex. 1990).

Joint and several liability is not an independent cause of action, but is a description of the extent of an individual defendant's liability for harm that is caused by the individual defendant together with others. Analogizing to a contract claim, joint and several liability is appropriate in quantum meruit if the relationship of appellants and their actions support findings that they agreed jointly to accept the benefits of English's labor knowing he expected to be paid for the work. *Cf.*

8

*Heldenfels*, 832 S.W.2d at 41 (elements of quantum meruit claim); *CTTI Priesmeyer*, 164 S.W.3d at 684 (conditions necessary for joint and several liability on contract claim). The court submitted the elements of a claim in quantum meruit to the jury. Any findings necessary to support imposition of joint and several liability are elements of English's claim in quantum meruit and must be deemed found in support of the judgment and upheld if the finding is supported by some evidence. *See* Tex. R. Civ. P. 279; *Ramos*, 784 S.W.2d at 668.

We conclude that the jury verdict and implied findings of omitted elements germane to joint and several liability provide a sufficient basis for the judgment generally and the assessment of joint and several liability against the appellants in particular.

**Sufficiency of the evidence**

We next examine whether the evidence is legally and factually sufficient to support the assessment of joint and several liability against appellants. Joint and several liability arises in contract and, by extension, in quantum meruit, based upon the relationship between the parties and the existence of what amounts to joint promises. *CTTI*, 164 S.W.3d at 684.

In reviewing the legal sufficiency of the evidence, we view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). There is legally insufficient evidence or no evidence of a vital fact when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the

9

opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997); *Patlyek v. Brittain*, 149 S.W.3d 781, 785 (Tex. App.—Austin 2004, pet. denied). More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Havner*, 953 S.W.2d at 711 (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)). If the evidence is so weak as to do no more than create a mere surmise or suspicion of its existence, its legal effect is that it is no evidence. *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 183 (Tex. 1995).

In reviewing a factual insufficiency point, we consider, weigh, and examine all the evidence presented at trial. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside a finding for factual insufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

Both the Kaliseks and the Englishes testified that the Kaliseks told English what repairs they wanted performed. English originally dealt with James Kalisek, who eventually told him to deal primarily with Brian Kalisek. Brian Kalisek testified that he never gave any vehicles to English to repair without giving specific instructions on what was to be repaired. English testified that he discussed the work needed in person when he picked up the vehicle or equipment and would follow-up those conversations on the telephone. He testified that he occasionally did minor work that was not discussed in advance, but consulted the Kaliseks before doing any major work.

The Kaliseks share control of K-Bar. James Kalisek owns 55% and appellant Brian Kalisek owns 45% of the company. Both brothers are vice presidents of the company. In addition,

10

James's wife, Michelle, is the president, and Brian's wife, Sharon, worked for the company during at least part of the time that the disputed events occurred. The record shows that James Kalisek and Brian Kalisek have authority to speak for and bind K-Bar. The bulk of the equipment and vehicles on which the disputed repairs were performed for which English seeks payment belonged to K-Bar Services. James Kalisek testified that, at one point, English had about fifteen K-Bar trucks and equipment pieces.

Both Kaliseks were present when English demanded payment on the unpaid invoices. Aside from one mutually acknowledged payment, they have not paid English what he demanded. They regained possession of all of the equipment except for the two items they claimed were converted. They justify their refusal to pay based on their asserted belief that English provided some services in exchange for permission to use appellants' equipment, on the poor quality of his work on some equipment, and on the debts they believe he owes them.

We conclude that there is legally and factually sufficient evidence to support the assessment of joint and several liability against K-Bar and the Kaliseks based on promises jointly made to English. There is sufficient evidence to support a finding that James and Brian Kalisek, individually and as officers and owners of K-Bar, authorized English to perform work and accepted additional work performed on equipment that either belonged to K-Bar or was on the property where K-Bar did business.[1] Although some evidence could support a view that the brothers each made some agreements individually, the evidence is not overwhelmingly against a finding that the

---

[1] The damage finding of $5,410.92 is less than the total amount English claimed he was owed, indicating that the jury did not accept some of his charges or found that they were not owed under the parties' agreement.

11

relationship among appellants, the circumstances of the authorization for repairs, and appellants'

behavior following the authorization of repairs support the imposition of joint and several liability

against all three appellants based on joint promises made for damages both under the contract theory

and in quantum meruit.

**Attorneys' fees**

Appellants contend that the trial court erred by failing to award them attorneys' fees.

A party cannot recover attorneys' fees from an opposing party unless permitted by statute or by

contract between the parties. *See Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 95 (Tex. 1999).

Appellants argue that they are entitled to attorneys' fees under statutes permitting recovery of

attorneys' fees in suits for breach of an oral or written contract, concerning possession of a motor

vehicle, and for deceptive trade practices. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West

1997) (contract); Tex. Prop. Code Ann. § 70.008 (West 1995) (vehicle possession); *see also* Tex.

Bus. & Com. Code Ann. § 17.50(d) (West Supp. 2005) (deceptive trade practices act or DTPA).

They claim attorneys' fees on the breach of contract and motor vehicle possession suit theories based

on the favorable jury finding with respect to their conversion claim. They alternatively argue that

they are entitled to attorneys' fees on a DTPA cause of action, which they assert they would have

prevailed on had the court presented a DTPA question to the jury.

Appellants did not recover under a contract theory, but contend that their conversion

claim is sufficiently intertwined with contract issues that they can recover attorneys' fees on the

conversion claim. Conversion is not among the causes of action for which attorneys' fees are

available under section 38.001, and attorneys' fees ordinarily are not recoverable as part of a claim

12

for conversion. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001; *Hageman/Fritz, Byrne, Head & Harrison, L.L.P. v. Luth*, 150 S.W.3d 617, 627 (Tex. App.—Austin 2004, no pet.). However, appellants argue that they can receive an award of attorneys' fees if their claim was intrinsically founded in the interpretation of a contract. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001; *see also First Nat'l Bank v. Gittelman*, 788 S.W.2d 165, 171 (Tex. App.—Houston [14th Dist.] 1990, writ denied). In *Gittelman*, the plaintiff prevailed on both conversion and breach of contract claims. 788 S.W.2d at 167. Noting that attorneys' fees were not available under the conversion claim, the Houston court upheld the award of attorneys' fees based on a finding by the fact-finder of breach of contract. *Id*. at 171.

Appellants are not entitled to attorneys' fees based on their conversion claim. Unlike in *Gittelman*, appellants did not recover under a breach of contract theory, and thus they are not entitled to attorneys' fees based on breach of contract. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001; *see also Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). Not only did appellants not recover on their breach of contract theory, their conversion claim is not related to their contract claim except that both claims concern the same truck. The conversion claim is not based on the performance of the sale contract, but on events that occurred after the sale from English to appellants was completed. After the sale of the truck was completed, appellants sought to rescind it, but English retained the sale proceeds and sold the truck to another buyer. The court did not err by refusing to award attorneys' fees based on the conversion claim.

Nor did the court err by denying attorneys' fees under the statute providing that "[t]he court in a suit concerning possession of a motor vehicle . . . and a debt due on it may award

13

reasonable attorneys' fees to the prevailing party." Tex. Prop. Code Ann. § 70.008 (West 1995). This section is in a subchapter of the property code containing statutes providing for the creation of and foreclosure on liens favoring persons who repair vehicles, repair or clean garments, and provide space to keep animals, vehicles, or crops. *See id*. §§ 70.001-.007 (West 1995 & Supp. 2005). No party claims to have held a lien on the truck under any of these sections. Further, this conversion claim is not a suit for possession of or for a debt on a motor vehicle. Appellants did not want to possess the truck. English did not incur a debt in order to purchase the truck, although he admittedly failed to return the sale proceeds when the truck was returned to him. We are not persuaded that this claim is within the purview of section 70.008.

Finally, appellants complain that the trial court prevented them from recovering attorneys' fees under the DTPA by failing to submit a jury issue relating to their DTPA claim. They argue that if a DTPA issue had been submitted and if they had prevailed on it, they would be entitled to an award of attorneys' fees based on such a finding.[2] Appellants' theory on appeal is that the court should have submitted a DTPA question based on evidence that English misrepresented to them that the 1986 pickup they purchased from English would go a certain speed when, according to Brian Kalisek, it would not. However, appellants do not have a pleading to support the submission of such a jury issue. Appellants made three specific complaints that could arguably be related to a DTPA cause of action: (1) unauthorized repairs by English, (2) his failure to return or deliver vehicles, and

---

[2] A consumer who prevails on a claim under the deceptive trade practices act is entitled to attorneys' fees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.50(d).

14

(3) his unauthorized purchase of a vehicle for appellants.[3] There is no assertion or even a general pleading to support a complaint that English misrepresented that a *good* he sold appellants had a use or characteristic that it did not have—i.e., that the 1986 pickup would not go above a certain speed. Thus, appellants do not have a pleading to support submission of a DTPA issue relating to a sale of the 1986 pickup

This view of appellants' pleadings is supported by the form of the DTPA question that they proposed and which the trial court refused to submit. The proposed question would have submitted issues relating only to English's representations as to his agreement to provide services to appellants and his provision of those services to appellants. The proposed question makes no mention of the 1986 pickup, a sale of any vehicle or good, or conduct by English in the sale of a good to appellant. Consequently, in addition to the absence of a pleading that would support a DTPA submission relating to a good sold to appellants by English, there is no proposed jury question in substantially correct form regarding misrepresentations about a good sold. *See* Tex. R. Civ. P. 278. The proposed jury question simply does not address a misrepresentation by English in connection with the sale of any good and, accordingly, it does not preserve any such error for appeal. *See id*; *see also* Tex. R. App. P. 33.1(a). The trial court did not err in failing to submit a DTPA-related jury question based on evidence that English misrepresented the maximum speed of the 1986

---

[3] Although appellants do not expressly refer to the DTPA in their pleadings, they do complain that English "made numerous representations which were false, misleading, and deceptive." Interpreting this pleading as stating a claim under the DTPA, we note that appellants were quite specific as to what they alleged constituted the false or deceptive acts by English.

pickup because the court was not asked to do so.  Thus, appellants were not erroneously denied attorneys' fees by the trial court's refusal to submit such a DTPA issue.

We conclude that the imposition of joint and several liability is supported by legally and factually sufficient evidence in the record and by the jury verdict.  We find no error in the trial court's refusal to award attorneys' fees to appellants.  We affirm the judgment.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed:   April 7, 2006